# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

CASE NO.  09-CV-23120-KING

ALEXIA FODERE,

      Plaintiff,

v.

PABLO LORENZO and
COMPACSTONE USA, INC.,

      Defendants.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court upon the Parties' Cross-Motions for Summary Judgment (DE #147, #148), filed pursuant to the Briefing Schedule set by the Court in the Order of December 22, 2010.  (DE #146).  Both Plaintiff's Motion for Summary Judgment (DE #147) and Defendants' Motion for Summary Judgment (DE #148) were filed January 10, 2011.  The Court is fully briefed on the matter.[1]

## I.   BACKGROUND

This is a copyright infringement case.  Plaintiff Alexia Fodere, a professional photographer, alleges Defendants used a photograph she owned in advertisements without

---

[1]Defendants Pablo Lorenzo and Compacstone USA Inc. filed Defendants' Opposition to Plaintiffs Motion for Summary Judgment and Motion to Strike Plaintiff's Statement of Material Facts (DE #150) January 18, 2011.  Plaintiff replied January 21, 2011.  (DE # 151).  Plaintiff filed Plaintiff's Response to Defendants' Second Supplemental Motion for Summary Judgment (DE #149) January 18, 2011, and Defendants replied January 21, 2011 (DE #153).

her permission.  Plaintiff does business through her company, Omega Eye Photography, LLC ("Omega Eye").  Plaintiff is the sole agent, owner and manager of Omega Eye. Defendant Compacstone USA, Inc. ("Compacstone") sells marble and quartz to be installed in homes.  Defendant Pablo Lorenzo was employed by Compacstone as a salesman when the events leading to the instant litigation took place.

In March 2009, Defendant Compacstone hired Plaintiff Fodere to photograph a kitchen that featured Compacstone marble and quartz.  Defendant Lorenzo negotiated with Fodere regarding the price of the photography session and the permissible uses of the photograph.  Fodere and Lorenzo, who spoke to each other in Spanish, agreed that the photos would be used "para publicidad."  Defendants allege that "para publicidad" translates in English as "for advertising."

On March 23, 2009, Plaintiff sent Defendants an invoice for the photographs[2] purchased by Compacstone.  Pl. Mot. Exh. 2.  (DE #147(2)).  The invoice is on Omega Eye letterhead.  *Id.*  Under the heading "Rights Licensed," the invoice states: "For Public Relations, Collateral and Website Usage for Unlimited Time.  All photographs are Copyrights 2009 Omega Eye, LLC."  *Id.*  After negotiating a decrease in price for Fodere's use of an assistant, Defendant Compacstone paid Plaintiff $600 for three photographs.  Compacstone subsequently used one of the photographs, the "Orange Kitchen" photograph, in magazine advertisements.  In a June 12, 2009, email, Plaintiff informed Defendant Lorenzo that she had seen the photograph in an advertisement in

---

[2]Defendants purchased three photographs from Plaintiff.  The use of only one of the photographs, the "Orange Kitchen" photograph, is at issue in this case.

Home Miami Magazine. Pl. Mot. Exh. 2 (DE #147(2)). The email explained that Compacstone did not have the right to use the photograph in this way, and that Plaintiff would be sending an invoice billing Defendants for this use. *Id.* On June 12, 2009, Plaintiff sent Defendants an invoice demanding payment of $1,000 in exchange for permission to use the photograph in advertising. Pl. Mot. Exh. 2 at 5 (DE #147(2)). This time, under the heading "Rights Licensed," the invoice states: "For Public Relations, Collateral and Website Usage and Advertising for Unlimited Time. All photographs are Copyrights 2009 Omega Eye, LLC." *Id.* (emphasis added). No one at Compacstone responded to either the email or the invoice.

Plaintiff filed the Complaint in the above-styled action October 16, 2009. (DE #1). Plaintiff claims Defendants infringed on her copyright of the Orange Kitchen photograph by using it in advertising without her authorization, in violation of Title 17, United States Code. She argues the March 23, 2009, invoice constituted a binding agreement between the parties, and that by its terms, the invoice limits Defendants' permissible use of the Orange Kitchen photograph to "public relations, collateral and website usage." Plaintiff claims Defendant Compacstone directly infringed on her copyright, and Defendant Lorenzo is a contributory infringer. Defendants contend Plaintiff does not have standing to bring this suit, and that Plaintiff orally granted Compacstone a license to use the photograph in advertising.

3

## II.    LEGAL STANDARD

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at

249–50.

## III.   ANALYSIS

Title 17 of the United States Code lays out a comprehensive scheme for the registration and protection of copyrights in the United States. The owner of a copyright enjoys a number of exclusive rights with respect to his copyrighted material, including: the right to reproduce the copyrighted work; to prepare derivative works based on the copyrighted work; to distribute copies of the work; to sell, rent, or lease it; and to display the copyrighted work publicly.  17 U.S.C. § 106.[3]

Title 17 also deals with copyright infringement.  Section 501(a) provides: "Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright." 17 U.S.C. 501(a).  The remedies available vary depending on the degree of the infringer's culpability.  In general, a successful copyright plaintiff may elect between two remedies.  The first is "the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b).  In lieu of actual damages and profits, the copyright owner may elect to recover "an award of statutory damages . . . in a sum of not less than $750 or more than $30,000 as the court considers just."  17 U.S.C. § 504(c)(1).  However, where the copyright owner proves that "infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 501(c)(2).  Plaintiff here alleges Defendants violated her

---

[3]Title 17, United States Code sections 107 to 122 more specifically delineate, and in some cases limit, the exclusive rights of a copyright owner in circumstances not relevant here. *See* 17 U.S.C. §§ 107–122.

copyright willfully. Pl.'s Mot. for Summ. J. 24.

### A.    Copyright Ownership and Standing

A plaintiff alleging copyright infringement must prove two elements to establish a prima facie case: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232–33 (11th Cir. 2010). Defendants argue that Plaintiff has failed to show she is the owner of the copyright of the Orange Kitchen photograph and therefore lacks standing to sue for copyright infringement.

To satisfy the first element, ownership of the copyright, "a plaintiff must prove that the work is original and that the plaintiff complied with applicable statutory formalities." *Id.* at 1233 (citation omitted). In judicial proceedings, "the certificate of a registration made before or within five years after publication of the work shall constitute prima facie evidence of the copyright and of the facts stated in the certificate. 17 U.S.C. § 410(c). However, the certificate of registration creates only a rebuttable presumption of the copyright's validity. "Once the plaintiff produces a certificate of registration, the burden shifts to the defendant to establish that the work in which copyright is claimed is unprotectable (for lack of originality)." *Latimer*, 601 F.3d at 1233.

It is undisputed that Plaintiff registered the Orange Kitchen photograph with the Registrar of Copyrights on July 1, 2009. Pl.'s Mot. for Summ. J. Exh. 1. The Copyright Registration states that Plaintiff, Alexia Fodere, is both the author of the Orange Kitchen photograph and the copyright claimant, and has been granted rights and permissions to the photograph. *Id.* Defendants argue they have rebutted the presumption of validity of

6

the copyright because Plaintiff has repeatedly admitted that Omega Eye, not Plaintiff, is
the owner of the copyright. Specifically, Defendants point out that Plaintiff stated in her
deposition that Omega Eye owns the copyright, and that both invoices billing Defendants
for the photograph stated Omega Eye owns the copyright. Defs.' Mot. for Summ. J. 6–7.
Her admissions, Defendants argue, establish that Plaintiff Fodere improperly registered
the copyright in her own name rather than in that of Omega Eye. *Id.* at 7.

Defendants misunderstand the nature of the evidence required to rebut the
presumption of validity. A defendant must come forward with some evidence or proof to
dispute that the copyrighted work was not copyrightable in the first instance. "It is
incumbent upon a putative infringer to establish that the work in which copyright is
claimed is unprotectable (for lack of originality), or, more specifically, to prove that the
portion of the copyrighted work actually taken is unworthy of copyright protection."
*Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996). Here, Defendants
have not alleged that the Orange Kitchen photograph is not eligible for copyright
protection. They have alleged only that the registration of the copyright in Plaintiff
Fodere's name was "improper," without explaining how it was improper or citing any law
to support that position. Defendants point to the Omega Eye invoices and Plaintiff's
comments during her deposition. A layperson's conclusions as to the legal effect of a
copyright registration cannot be binding on this Court. Furthermore, even if Omega Eye
were the sole entity named in the Certificate of Registration, "it is not necessary that the
owner's true name be used at all so long as a name with which it is identified is used and
no innocent persons are misled." *Tennessee Fabricating Co. v. Moultrie Mfg. Co.*, 421

F.2d 279, 283 (5th Cir. 1970).[4]  There has no been no allegation that Defendants were misled in any way by the Certificate of Registration.  Accordingly, the Court finds Plaintiff Fodere has standing to bring suit for copyright infringement of the Orange Kitchen photograph.

### B.   Copyright Infringement

As noted above, the second element of copyright infringment is "copying of constituent elements of the work that are original." *Latimer*, 601 F.3d at 1232–33.  It is undisputed that the Orange Kitchen photograph was reproduced in magazines.  Accordingly, Plaintiff has established the second element of copyright infringement.

However, Defendants have asserted as an affirmative defense that Plaintiff granted them a license to use the photograph in advertising.  "Generally, a copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999).  Because a license is an affirmative defense, Defendants "bear[] the burden of proving such license exists." *Carson v. Dynegy, Inc.*, 344 F.3d 446, 451 n.5 (5th Cir. 2004); *see also Pavlica v. Behr*, 397 F. Supp. 2d 519, 526 (S.D.N.Y. 2005) ("As the alleged licensees, Defendants bear the burden of proving the existence of a license.").

Defendants have met their burden.  The Parties agree that Plaintiff Fodere granted Defendant Compacstone a license to use the Orange Kitchen photograph.  Pl.'s Mot. for

---

[4]Decisions of the United States Court of Appeals for the Fifth Circuit handed down by the close of business on September 30, 1980 are binding as precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

Summ. J. 10; Defs.' Mot. for Summ J. 4–7. The dispute is whether advertising was within the scope of the license, which in turn depends on which interaction between the Parties created the license. Defendants contend the license was granted during the conversations between Plaintiff Fodere and Defendant Lorenzo before the photograph was taken. Plaintiff claims the March 23, 2009, invoice Plaintiff Fodere sent to Defendants along with the photograph created the license. Because the facts related to both the conversations and the invoice are not disputed, the issue is a purely legal one that may be decided by the Court on summary judgment. *See, e.g., Wilchombe v. Teevee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (affirming summary judgment on copyright infringement claim based on district court's finding that plaintiff granted an oral nonexclusive license to defendants).

### 1.    Existence of an Oral License

As an initial matter, there is no genuine dispute between the parties as to existence of an oral agreement. Although Plaintiff argues otherwise in her Motion for Summary Judgment, Plaintiff admitted during her deposition that the agreement between the Parties was oral:

> A:    The agreement was set when they sent me the check, and they paid for the photos.
> Q:    Okay.
> A:    And by word.
> Q:    By word? So it was an oral agreement?
> A:    Both by check, by paying me, and by oral.

Pl.'s Depo. 95:23–96:3. Defendants have contended throughout this litigation that the agreement was oral. Under both federal copyright law and state contract law, such an

oral agreement is permissible. The Court finds such an agreement was reached in the instant case.

Although all exclusive transfers of copyright must be in writing, 17 U.S.C. § 204(a), non-exclusive licenses "may be granted orally, or may even be implied by conduct."[5] *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 752 (11th Cir. 1997). The difference between an exclusive and a non-exclusive license in copyright is akin to the difference between a fee simple and an easement on real property. An exclusive license is a conveyance of copyright ownership, "a promise that the same rights will not be conveyed to others." 6 William F. Patry, *Patry on Copyright* § 21:15 (2010). A nonexclusive license, on the other hand, is "a bare right to use the licensed intellectual property without any right to exclude others, including other licensees of the grantor." *Id.* In short, a nonexclusive license of a copyrighted work is "a mere promise not to sue for conduct that would otherwise be infringing." *Id.* In the instant case, a nonexclusive license of the Orange Kitchen photograph would allow Defendants to use it, but also allow Plaintiff to grant the same rights for use to others. Such a license may be granted orally.

Whether a copyright owner has granted a nonexclusive license is determined by

---

[5]Section 204 provides: "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). Non-exclusive licenses are treated differently because they are specifically exempted from the definition of "transfer of copyright ownership" in the statute. 17 U.S.C. § 101 (defining "transfer of copyright ownership" as any conveyance of "any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive license").

state contract law, not federal copyright law. *Foad Consulting Group, Inc. v. Musil Govan Azzalino*, 270 F.3d 821, 827 (9th Cir. 2001) ("State law determines whether a copyright holder has granted [a nonexclusive] license."); *McCoy v. Mitsubishi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995) ("Whether express or implied, a license is a contract governed by ordinary principles of state contract law."). In Florida, "oral contracts[] are valid and enforceable," but are "subject to the basic requirements of contract law such as offer, acceptance, consideration and sufficient specification of essential terms." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004).

On the record now before the Court, there is no genuine issue of material fact as to any of these "basic requirements of contract law." It is undisputed that Defendants orally offered to pay Plaintiff for the purchase of three photographs, one of which was the Orange Kitchen photograph. Lorenzo Depo. 12:9–13:14; 16:11–12; Pl.'s Mot. for Summ. J. ¶6. It is undisputed that Plaintiff verbally accepted the offer, and indeed sold the photographs to Defendants. Lorenzo Depo. 13:15–20; Pl.'s Mot. for Summ. J. ¶7. It is further undisputed that Defendants paid Plaintiff the agreed-upon $600 as consideration for the photographs. Pl.'s Mot. for Summ. J. Exh. B; Pl.'s Depo. 95:10; Ferrando Depo. 32:1–23.

The Parties' arguments instead center around the final requirement for contract formation, "sufficient specification of essential terms." *See St. Joe Corp.*, 875 So. 2d at 381. However, it is clear from the record that there is also no genuine issue of material fact with respect to the terms of the oral agreement reached by the Parties. Defendant Lorenzo, who negotiated the deal with Plaintiff, repeatedly stated in his deposition that

the terms had always been clear: Defendant Compacstone was buying the photographs for advertising in magazines. He stated: "She was crystal clear that that [sic] will be used for magazines." Lorenzo Depo. 14:10–11. He later said, "She mentioned about we can use it for whatever we need, for whatever we want. . . We was very specific about the magazines, because it's where our intention was." *Id.* 19:2–6. Defendant Lorenzo also testified: "I said that will [sic] be used for magazines." *Id.* 21:3–5.

In addition, Defendant Lorenzo negotiated the quality of the photographs so that they would be tailored specifically for magazine advertisements:

> She knew what will be used for magazines. Because, in fact, we was talking about the resolution of the pictures. Because in the magazines, when they publish something, they need high resolution. . . . And she told me . . . I'm going to send you the picture with the resolution–enough resolution so you can have–you won't have any problems once you submit it to whoever you want.

Lorenzo Depo. 14:18–15:5. He further explained, "She knew for what we want the picture. She send the resolution we want. If you want a picture for our Web site, you don't need that much resolution, but she knew." *Id.* 23:2–3.

Finally, both sides agree that they used the Spanish word "publicidad" to describe the permissible uses of the Orange Kitchen photograph. Defendant Lorenzo explained: "She was clear that will be used for advertising. In fact, the right word was not advertising, because we was talking in Spanish. The right word is publicidad." *Id.* 15:12–15. *See also, id.* 19:24–20:1 (Q: And she also said that you could use it for publicidad? A: Yes). Plaintiff admitted in her deposition that she told Defendant

Lorenzo the photographs could be used "para publicidad." Pl.'s Depo. 91:4–14.[6]
Defendant has submitted evidence that "publicidad" translates in English as
"advertising."[7] Def.s' Mot. for. Summ. J. Exh. B. Plaintiff argues that "publicidad" has a
second meaning, publicity generally. However, Plaintiff has offered only one statement
in her deposition as evidence to support her position that this latter, more general,
meaning was intended by the use of the word "publicidad." Immediately after stating in
her deposition that the photographs could be used "para publicidad," the questions and
answers continued as follows:

> Q:   Did Compac agree to those terms?
> A:   Yes.  Pablo Agreed.
> Q:   How did he agree?
> A:   When I say this is not for advertising he said: No, no, no.  No, no.

Pl.'s Depo. 91:20–24.  This statement is ambiguous.  The words "No, no, no" could
reflect either agreement or disagreement with Plaintiff's statement that the photographs
were not for advertising.  Plaintiff's deposition testimony filed with the Court does not

---

[6]This portion of the deposition transcript reads as follows:

> Q:   What did you say in Spanish when you said it?
> A:   What I just told.
> Q:   I'd like the words in Spanish.
> A:   Para publicidad.
> Q:   Publicidad?
> A:   Para brochures, para emails.

Pl.'s Depo. 91:10–16.

[7]The Court may take judicial notice of a fact that is capable of "accurate and ready determination
by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).
*See, e.g., Corbin v. Cannon*, 838 F.Supp. 561, 563 (M.D. Fla. 1993) (taking judicial notice of
dates Defendant was Sheriff of Pasco County). Accordingly, the Court takes judicial notice that
the Spanish word "publicidad" translates in English as "advertising."

explain the statement any further, and nowhere in the deposition does Plaintiff state that "publicidad" meant anything other than advertising.

Consequently, the record before the Court contains significant evidence from Defendants, including Plaintiff's own statements, that the oral license granted by Plaintiff included advertising use. Plaintiff has attempted to rebut this evidence with a single ambiguous statement in her deposition. This is a "mere scintilla" of evidence that is not sufficient to support Plaintiff's own Motion for Summary Judgment, or defeat Defendants' properly-supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–1 (1986) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."). Rather, the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Accordingly, the Court finds Plaintiff granted Defendant Compacstone an oral nonexclusive license to use the Orange Kitchen photograph, and that the license included the right to use the photographs in advertisements.

### 2.    Legal Effect of the March 2009 and June 2009 Invoices

Plaintiff Fodere sent Defendants an invoice on March 23, 2009. Pl.'s Mot. Exh. B. The invoice includes a "Rights Licensed" section, which states: "For Public Relations, Collateral and Website Usage for Unlimited Time. All photographs are Copyrights 2009 Omega Eye." *Id.* On June 12, 2009, Plaintiff sent Defendants a second invoice billing them $1,000 for the right to use the photographs in advertising. *Id.* Plaintiff contends these invoices are proof of her intent that the license to Defendants exclude advertising use. After finding that Plaintiff granted an oral nonexclusive license, the Court must

determine what, if any, effect the invoices had on the license previously granted.

"It is well established that the parties to a contract can discharge or modify the contract, however made or evidenced, through a subsequent agreement." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). However, "a party cannot modify a contract unilaterally." *Id.* at 382. Any modification "requires consent and a meeting of the minds of the parties to the contract whose rights or responsibilities are sought to be affected by the modification." *Dows v. Nike, Inc.*, 846 So. 2d 595, 603 (Fla. 4th DCA 2003) ("The unilateral modification of a contract is unenforceable."). There is no evidence in the record that there was any meeting of the minds with respect to the invoice that would be sufficient to alter the original agreement. In fact, the only record evidence on this point is that Defendants understood the March invoice to be consistent with the oral agreement, and that they found the June invoice to be a unilateral attempt to modify the agreement.

When asked if the March invoice created a discrepancy because the "Rights Licensed" section did not include the word "advertising," Defendant Lorenzo stated in his deposition, "No I don't think that changed anything, because she knew that will be used for magazines. So if for her, this include what she agreed with me, it's fine with me." Lorenzo Depo. 24:14–16. He then stated the absence of the word "advertising" made no difference because, "this is an invoice. And the agreement was already made with me." *Id.* 24:21–22. Carlos Ferrando, who handles marketing for Defendant Compacstone, also explained his understanding of the invoice: "I understand for public relations and collateral, that this is for advertisement. Because, like the verbal agreement was for advertisement, I assume it's included in that." Ferrando Depo. 35:22–25. Clearly,

Defendants did not intend for the March invoice to alter the oral agreement because they believed the invoice was consistent with the agreement.

With respect to the June invoice, Defendant Lorenzo stated in his deposition: "To me, the deal was closed, and the invoice was paid. . . . [We] are not doing nothing extra for what we agree. Why she's trying to change the agreement?" Lorenzo Depo. 35:21–5. It is clear that the June invoice did not reflect a "meeting of the minds" that the prior oral agreement would be altered. Plaintiff has produced no evidence to support a finding that the June invoice was anything other than a unilateral attempt to modify the oral agreement granting a nonexclusive license.

Because there was no "meeting of the minds" with respect to the invoices, neither invoice had any effect on the license.

## IV.   CONCLUSION

The Court finds that Defendant Compacstone did not infringe Plaintiff's copyright of the Orange Kitchen photograph. Thus, the Court need not reach the issue of contributory infringement by Defendant Lorenzo.

Accordingly, upon a careful review of the record and for the foregoing reasons, it is hereby

**ORDERED, ADJUDGED, and DECREED** as follows:

1.   Plaintiff Alexia Fodere's Motion for Summary Judgment **(DE #147)** is **DENIED.**

2.   Defendants' Motion for Summary Judgment **(DE #148)** is **GRANTED.**

3.   The above-styled action is **DISMISSED with prejudice.**

3.      The Clerk is directed to **CLOSE** this case.

4.      All pending Motions are **DENIED as moot.**

**DONE AND ORDERED** in Chambers, at Miami, Miami-Dade County, Florida,

this 3rd day of February, 2011.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:     ***Counsel for Plaintiff***
**John Bruce Ostrow**
JOHN B. OSTROW, PA
Courthouse Tower
44 West Flagler Street
Suite 1250
Miami, FL 33130
**Stephen Asher Ostrow**
JOHN B. OSTROW, PA
Courthouse Tower
44 West Flagler Street
Suite 1250
Miami, FL 33130

cc:     ***Counsel for Defendant***
**Carlos Federico Osorio**
Aballi Milne Kalil & Escagedo
SunTrust International Center
1 SE 3rd Avenue
Suite 2250
Miami, FL 33131

**Hendrik Gerardus Milne**
Aballi Milne Kalil & Escagedo
SunTrust International Center
1 SE 3rd Avenue
Suite 2250
Miami, FL 33131
305-373-6600
Fax: 373-7929
Email: hmilne@aballi.com

17